IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Demetrio Sears, | ) | C/A No. 0:13-688-TLW-PJG |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| Warden David Dunlap, *Walden Correctional Institution*, | ) | |
| | ) | |
| | ) | |
| Respondent. | ) | |
| _____ | ) | |

Petitioner Demetrio Sears ("Sears"), a state prisoner represented by counsel, filed this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. This matter comes before the court pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) DSC for a Report and Recommendation on the respondent's motion for summary judgment. (ECF No. 19.) Sears filed a response in opposition. (ECF No. 33.) Having carefully considered the parties' submissions and the record in this case, the court concludes that the respondent's motion for summary judgment should be granted and Sears's Petition denied.

## BACKGROUND

Sears was indicted in December 2002 in Richland County for attempted armed robbery (02-GS-40-10992). (App. at 1355-56, ECF No. 22-2 at 176-77.) Sears was represented by Douglas Strickler, Esquire, and on January 6, 2004 was retried by a jury and found guilty as charged.[1] (App. at 1169, ECF No. 22-1 at 171.) The circuit court sentenced Sears to eighteen years' imprisonment. (App. at 1184, ECF No. 22-2 at 5.)

_____

[1] Sears's first trial resulted in a mistrial due to a hung jury. (Respt.'s Mem. Supp. Summ. J., ECF No. 20 at 2.)



Sears timely appealed and was represented by Joseph L Savitz, III, Esquire, who filed an Anders[2] brief on Sears's behalf that presented the following issue:

> The judge erred by failing to instruct the jury that Sears had a right to arm himself if he reasonably believed that he was acting in self-defense.

(ECF No. 23-3 at 4.)  On February 24, 2006, the South Carolina Court of Appeals issued an order dismissing Sears's appeal.  (State v. Sears, Op. No. 06-UP-126 (S.C. Ct. App. Feb. 24, 2006); ECF No. 23-5.)  The remittitur was issued on March 14, 2006.  (ECF No. 23-6.)

Sears filed a *pro se* application for post-conviction relief ("PCR") on March 20, 2006 alleging various claims of ineffective assistance of counsel.  (Sears v. State of South Carolina, 06-CP-40-1559; ECF No. 25-1.)  The State filed a return.  (App. at 1226-30, ECF No. 22-2 at 47-51.)  Sears filed five amendments to his PCR application.  (App. at 1185-225, ECF No. 22-2 at 6-46.)  In his fifth amendment, Sears listed his PCR issues (as amended) as follows:

1. Counsel failed to adequately consult or communicate, prepare for trial, or attempt to have a working relationship with Applicant.

2. Counsel was ineffective in failing to request a continuance.

3. Counsel provided deficient performance in failing to object to alleged juror misconduct and failing to object to trial court's failure to investigate such.

4. Trial counsel provided ineffective assistance of counsel in failing to present favorable existing evidence and pursue favorable line of questioning (shoe report).

5. Trial counsel provided ineffective assistance in failing to object to prosecutor misconduct (presentation of shoes).

---

[2] Anders v. California, 386 U.S. 738 (1967).  Anders requires that counsel who seeks to withdraw after finding the "case to be wholly frivolous" following a "conscientious examination" must submit a brief referencing anything in the record that arguably could support an appeal; furnish a copy of that brief to the defendant; and after providing the defendant with an opportunity to respond, the reviewing court must conduct a full examination of the proceedings to determine if further review is merited.  Anders, 386 U.S. at 744.



6.    Ineffective assistance of counsel in failing to realize and impeach with numerous inconsistent statements and contradictions of the alleged victims and to make note of favorable evidence.

7.    Tr[ia]l counsel provided deficient performance in failing to present or utilize favorable evidence (dispatch records).

8.    Trial counsel provided ineffective assistance in failing to obtain a crime scene expert to analyze the scene and in failing to challenge the allege[d] victims['] version of events in regards to the manner in which he shot Applicant.

9.    Counsel provided ineffective assistance in failing to advocate Applicant's defense and attempt to establish victim's version of events as impracticable and implausible.

10.    Ineffective assistance of counsel in failing to present favorable evidence (Blood Transfusion Report) and in failing to adequately cross-examine Dr. Bynoe regarding this evidence.

11.    Ineffective assistance of trial counsel in failing to obtain a second opinion or an expert to counter Dr. Bynoe[']s narrow and conclusively stated opinions or to object to these opinions as outside the scope of his expertise, regarding the lack of blood evidence at the scene of the incident and in failing to adequately cross-examine Dr. Bynoe regarding such.

12.    Ineffective assistance of counsel in failing to obtain an expert to examine the trajectory of the projectiles fired and the wounds suffered by the Applicant as a result [there]of, or in failing to adequately cross-examine Dr. Bynoe regarding these wounds.

13.    Ineffective assistance of trial counsel in failing to review Applicant's medical records prior to trial and misstating facts as a result [there]of.

14.    Counsel provided deficient performance in failing to present evidence that Applicant had invoked his right to have counsel present during questioning.

15.    Ineffective assistance of counsel in failing to present evidence that co-defendant's statement was unreliable and product of coercion and duress.

16.    Counsel was ineffective in failing to request self-defense charge and request jury be instructed that Applicant had a right to arm himself in self-defense if he reasonably believed that he was acting in self-defense.

17.    Ineffective assistance of counsel in failing to develop viable defense strategy.



18. Denial of effective assistance of counsel in cumulative effect of counsel's errors.

(App. at 1220-25, ECF No. 22-2 at 41-46.) On February 20, 2008, the PCR court held an evidentiary hearing at which Sears appeared and testified and was represented by Charles Johnson, Esquire. By order filed December 22, 2009, the PCR judge denied and dismissed with prejudice Sears's PCR application. (App. at 1331-54 , ECF No. 22-2 at 152-175.) Sears filed a *pro se* motion pursuant to Rule 59(e) of the South Carolina Rules of Civil Procedure that was denied by the state court as untimely filed. (ECF Nos. 24-1 & 24-2.)

Sears appealed and filed a motion requesting to proceed *pro se* and a motion for standby counsel, which were granted by the South Carolina Supreme Court. (ECF Nos. 24-4, 24-5, & 24-6.) On January 21, 2011, Sears filed a *pro se* petition for a writ of certiorari. (ECF No. 24-8.) Sears subsequently retained Jeremy A. Thompson, Esquire, who filed an amended petition for a writ of certiorari on Sears's behalf that raised the following issues:

I.   Whether the lower court erred in finding that defense counsel's preparation for trial was proper despite the fact that defense counsel met with the Petitioner for an hour and six minutes prior to the Petitioner's first trial and did not meet with the Petitioner again prior to the second trial?

II.  Whether the lower court erred in finding that defense counsel was not ineffective for repeatedly misstating the number of times the Petitioner was shot during his opening statement to the jury?

III. Whether the lower court erred in finding that defense counsel was not ineffective for failing to introduce numerous instances of differing accounts and inconsistencies from the two alleged victims of the incident?

IV.  Whether the lower court erred in failing to address the Petitioner's allegations pursuant to a cumulative-error analysis?

(ECF No. 24-12 at 3; <u>see also</u> <u>id.</u> at 10.)[3]  The State filed a return (ECF Nos. 24-9 & 24-13), and

Sears replied (ECF No. 24-14).  By order dated September 20, 2012, the South Carolina Supreme

Court denied Sears's petition for a writ of certiorari.  (ECF No. 24-15.)  Sears filed a petition for

rehearing (ECF No. 24-16) which was denied on October 31, 2012 (ECF No. 24-17).  The remittitur

was issued October 31, 2012.  (ECF No. 24-18.)  This action followed.

## FEDERAL HABEAS ISSUES

Sears's federal petition for a writ of habeas corpus raises the following issues:

**Ground One:**  Petitioner's right to the effective assistance of counsel, as guaranteed
by the Sixth and Fourteenth Amendments, was violated by defense counsel's failure
to prepare for trial and his failure to meet with the Petitioner prior to his trial.
**Supporting Facts:**  The Petitioner was initially tried by himself from September
23-25, 2003, but the jury could not reach a verdict in his case.  The Petitioner was
retried in January 2004, and was convicted.  Defense counsel met with the Petitioner
on only one occasion for a total of 1.1 hours prior to the first trial, and did not meet
with him again prior to the second trial.  Defense counsel made numerous mistakes
during the trial, which are detailed in other allegations below, which could have been
corrected through additional preparation.  Defense counsel's lack of preparation
prejudiced Petitioner.

**Ground Two:**  The Petitioner's right to the effective assistance of counsel, as
guaranteed by the Sixth and Fourteenth Amendments, was violated by defense
counsel's misstatements of the number of times the Petitioner was shot during his
opening statement to the jury.
**Supporting Facts:**  The Petitioner was shot five times by the victim in this case.
During his opening statement, defense counsel informed the jury that the Petitioner
was shot eight times by the victim.  This erroneous argument was stated five times
during the opening statement.  Defense counsel's repeated misstatements of fact
constitute deficient conduct, and the Petitioner was prejudiced by this deficient
performance.

**Ground Three:**  The Petitioner's right to the effective assistance of counsel, as
guaranteed by the Sixth and Fourteenth Amendments, was violated by defense
counsel's repeated failures to impeach the victims with readily available evidence
disputing their testimony.

---

[3] Sears expressly withdrew the issues raised in his *pro se* petition that were not raised in his
amended petition for a writ of certiorari.  (<u>See</u> ECF No. 24-12 at 5 n.4.)



**Supporting Facts:** (1) Failure to utilize documentation regarding the Petitioner's shoes: At trial, one of the victims, Andrae Stokes, testified that the individual who held a gun to his head—the Petitioner—was wearing white and blue shoes at the time of the incident. The Petitioner, however, was wearing white and gray shoes that day. Defense counsel did not impeach Stokes with the actual appearance of the shoes.

(2) Failure to impeach the victim regarding his identification of the Petitioner: At trial, one of the victims, Sterling Patterson, testified that he was able to identify the Petitioner after he shot him and the Petitioner's mask had fallen down. An investigative report revealed, however, that when Patterson made his identification, he stated that he identified the Petitioner before he put his mask on. Defense counsel failed to impeach Patterson with the discrepancy in identifications.

(3) Failure to impeach the victim regarding the identification of an innocent third party: Prior to trial, Patterson told the police that the Petitioner and another individual named Kassim Hosendove came to his business the day before the incident in an attempt to "case" the business. Patterson identified Hosendove. However, Hosendove was in Florida at the time of the offense. Defense counsel did not bring this evidence to the jury's attention during trial.

**Ground Four:** The Petitioner's right to the effective assistance of counsel, as guaranteed by the Sixth and Fourteenth Amendments, was violated by defense counsel's cumulative errors at trial.

**Supporting Facts:** As detailed above, defense counsel committed several errors in his representation of the Petitioner at trial. The Petitioner believes that the cumulative effect of these errors warrants the granting of a new trial even if, standing alone, each error would not warrant a new trial.

(Pet., ECF No. 1.)

## DISCUSSION

### A.    Summary Judgment Standard

Summary judgment is appropriate only if the moving party "shows that there is no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party may support or refute that a material fact is not disputed by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). Rule 56 mandates entry of summary



judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

In deciding whether there is a genuine issue of material fact, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Id. at 248.

The moving party has the burden of proving that summary judgment is appropriate. Once the moving party makes this showing, however, the opposing party may not rest upon mere allegations or denials, but rather must, by affidavits or other means permitted by the Rule, set forth specific facts showing that there is a genuine issue for trial. See Fed. R. Civ. P. 56(c)), (e); Celotex Corp., 477 U.S. at 322.

**B.    Habeas Corpus Standard of Review**

In accordance with the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), claims adjudicated on the merits in a state court proceeding cannot be a basis for federal habeas corpus relief unless the decision was "contrary to, or involved an unreasonable application of clearly established federal law as decided by the Supreme Court of the United States," or the decision "was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d)(1), (2). When reviewing a state court's application of federal law, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Williams v. Taylor,



529 U.S. 362, 410 (2000); see also Harrington v. Richter, 131 S. Ct. 770, 785 (2011); Humphries

v. Ozmint, 397 F.3d 206 (4th Cir. 2005); McHone v. Polk, 392 F.3d 691 (4th Cir. 2004).  Moreover,

state court factual determinations are presumed to be correct and the petitioner has the burden of

rebutting this presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).

"A state court's determination that a claim lacks merit precludes federal habeas relief so long

as 'fairminded jurists could disagree' on the correctness of the state court's decision."  Harrington,

131 S. Ct. at 786 (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)).  Under the AEDPA,

a state court's decision "must be granted a deference and latitude that are not in operation" when the

case is being considered on direct review.  Id. at 785.  Moreover, review of a state court decision

under the AEDPA standard does not require an opinion from the state court explaining its reasoning.

See id. at 784 (finding that "[t]here is no text in [§ 2254] requiring a statement of reasons" by the

state court).  If no explanation accompanies the state court's decision, a federal habeas petitioner

must show that there was no reasonable basis for the state court to deny relief.  Id.  Pursuant to

§ 2254(d), a federal habeas court must (1) determine what arguments or theories supported or could

have supported the state court's decision; and then (2) ask whether it is possible that fairminded

jurists could disagree that those arguments or theories are inconsistent with the holding of a prior

decision of the United States Supreme Court.  Id. at 786. "If this standard is difficult to meet, that

is because it was meant to be."  Id.  Section 2254(d) codifies the view that habeas corpus is a

" 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for

ordinary error correction through appeal."  Id. (quoting Jackson v. Virginia, 443 U.S. 307, 332 n.5

(1979) (Stevens, J., concurring in judgment)).

## C. Exhaustion Requirements

A habeas corpus petitioner may obtain relief in federal court only after he has exhausted his state court remedies. 28 U.S.C. § 2254(b)(1)(A). "To satisfy the exhaustion requirement, a habeas petitioner must present his claims to the state's highest court." Matthews v. Evatt, 105 F.3d 907, 911 (4th Cir. 1997), abrogated on other grounds by United States v. Barnette, 644 F.3d 192 (4th Cir. 2011); see also In re Exhaustion of State Remedies in Criminal and Post-Conviction Relief Cases, 471 S.E.2d 454, 454 (S.C. 1990) (holding that "when the claim has been presented to the Court of Appeals or the Supreme Court, and relief has been denied, the litigant shall be deemed to have exhausted all available state remedies."). To exhaust his available state court remedies, a petitioner must "fairly present[] to the state court both the operative facts and the controlling legal principles associated with each claim." Longworth v. Ozmint, 377 F.3d 437, 448 (4th Cir. 2004) (internal quotation marks and citation omitted). Thus, a federal court may consider only those issues which have been properly presented to the state appellate courts with jurisdiction to decide them. Generally, a federal habeas court should not review the merits of claims that would be found to be procedurally defaulted (or barred) under independent and adequate state procedural rules. Lawrence v. Branker, 517 F.3d 700, 714 (4th Cir. 2008); Longworth, 377 F.3d 437; see also Coleman v. Thompson, 501 U.S. 722 (1991). For a procedurally defaulted claim to be properly considered by a federal habeas court, the petitioner must "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." Coleman, 501 U.S. at 750.

## D. Summary Judgment Motion

Sears contends that trial counsel was ineffective in several ways, each of which is presented and discussed below. By way of background, Sears and Willie Alexander ("Alexander") were



indicted and tried together for attempted armed robbery based on allegations that these co-defendants, along with a third individual, attempted to rob Ntense Kustoms and Car Audio.[4]  This alleged incident resulted in Sears receiving numerous gunshot wounds from Sterling Patterson. Sears alleges that the primary issues at trial were how the shooting had occurred and whether Patterson or Sears was the true criminal.  Testimony during the PCR hearing revealed that credibility of the witnesses was a major issue at trial.

During the trial, Patterson testified that on the morning of the incident he returned from the bank to his business, Ntense Kustoms and Car Audio, and as he was speaking to his employee Andrae Stokes ("Stokes"), Patterson saw a van pull up in front of his business.  Patterson stated that he saw at least two individuals with guns get out of the van and one had a rag or something over his face.  Patterson indicated that he ran and retrieved a firearm from his office and when he returned to the doorway of the showroom with his weapon raised there were three individuals in his store. Patterson stated that two of the individuals fled and the third individual was standing over Stokes with a gun to Stokes's head.  Patterson indicated that he fired his weapon and when the individual standing over Stokes then pointed his gun at Patterson, Patterson pointed his weapon towards that individual hitting him.  Patterson described the individual standing over Stokes, whom he later identified as Sears, as light-skinned and indicated that the individual's mask fell down as he was being shot and Patterson was able to see his face.  Patterson stated as the individual was fleeing, he fell through the front door to the business and indicated that the glass door was shot when Patterson was firing.  Patterson then testified that he returned to his office to retrieve more ammunition and heard what sounded like a car leaving the scene.  Patterson stated that he and Stokes called 9-1-1 and

---

[4] Unless otherwise indicated, all references in this Report and Recommendation are to Sears's second trial, as his first trial resulted in a mistrial.



attempted unsuccessfully to follow the individuals. (See App. at 213-26, 237-40, 252-53, ECF No. 20-2 at 63-73, 87-90, 102-03.) Stokes's testimony on the version of events was similar to Patterson's account, but Stokes was unable to identify any of the individuals. (See App. at 142-65, ECF No. ECF No. 20-1 at 144 through ECF No. 20-2 at 15.)

Sears, however, presented a different version of events. Sears testified that he, Alexander, and a third individual (Tashim Vann) traveled together to Patterson's business on the way to a job interview Sears had scheduled. Sears stated that when they arrived at Patterson's business, he exited the vehicle first and saw Patterson standing outside with a gun. Sears testified that he retrieved Vann's gun from the vehicle and when Patterson raised his gun, he responded by raising his gun. Sears stated that Patterson fired his weapon at him striking him several times and Sears may have fired his weapon. Sears stated he returned to the van barely conscious, they drove away, and he lost consciousness. (App. at 963-69, 975-82, ECF No. 21-3 at 133-39, 145-52.) Alexander's testimony on the version of events was similar to Sears's account. (App. at 854-71, ECF No. 21-3 at 24-41.)

Sears's defense at trial was that Patterson had manufactured the scene to conceal the fact that he had opened fire on Sears. In support of this defense, Sears argued that, undermining the version of events presented by Patterson and Stokes, no blood was found at the crime scene despite the nature of Sears's injuries; that Sears did not have any cuts from going through a glass door; and that all of the shell casings found at the business matched Patterson's firearm. (App. at 1101-1115, ECF No. 22-1 at 103-17.)

1.    **Ineffective Assistance of Counsel Generally**

A defendant has a constitutional right to the effective assistance of counsel. To demonstrate ineffective assistance of counsel, a petitioner must show, pursuant to the two-prong test enunciated in Strickland v. Washington, 466 U.S. 668 (1984), that (1) his counsel was deficient in his



representation and (2) he was prejudiced as a result.  Id. at 687; see also Williams v. Taylor, 529 U.S. 362, 391 (2000) (stating that "the Strickland test provides sufficient guidance for resolving virtually all ineffective-assistance-of-counsel claims").

 To satisfy the first prong of Strickland, a petitioner must show that trial counsel's errors were so serious that his performance was below the objective standard of reasonableness guaranteed by the Sixth Amendment to the United States Constitution.  With regard to the second prong of Strickland, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694.  Prejudice may be presumed when (1) a defendant is completely denied counsel at a critical stage of his trial, (2) counsel "entirely fails to subject the prosecution's case to a meaningful adversarial testing," or (3) "although counsel is available to assist the accused during trial, the likelihood that any lawyer, even a fully competent one, could provide effective assistance is so small that a presumption of prejudice is appropriate without inquiry into the actual conduct of the trial." United States v. Cronic, 466 U.S. 648, 659 (1984).

The United States Supreme Court has cautioned federal habeas courts to "guard against the danger of equating unreasonableness under Strickland with unreasonableness under § 2254(d)." Harrington, 131 S. Ct. 770, 788 (2010).  The Court observed that while " '[s]urmounting Strickland's high bar is never an easy task[,]' . . . [e]stablishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult." Id. (quoting Padilla v. Kentucky, 559 U.S. 356, 371 (2010)).  The Court instructed that the standards created under Strickland and § 2254(d) are both " 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." Id. (citations omitted).  Thus, when a federal habeas court reviews a state court's determination regarding an ineffective assistance of counsel claim, "[t]he question is not whether counsel's actions



were reasonable.  The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard."  Id.

Although the Supreme Court has held that a decision containing a reasoned explanation is not required from the state court, in the case at bar this court has the benefit of the PCR court's written opinion, certiorari review of which was denied by the South Carolina Supreme Court.  See, e.g., Ylst v. Nunnemaker, 501 U.S. 797, 803-04 (1991) (indicating that when a state appellate court affirms a lower court decision without reasoning, the court may look through the later, unreasoned, summary disposition and focus on the last reasoned decision of the state court).  Having reviewed the PCR court's order pursuant to the § 2254 standard, the court finds for the reasons that follow that the state court did not unreasonably misapply the Strickland test in determining that no Sixth Amendment violation occurred.

### 2.    PCR Court Findings

In rejecting Sears's allegations of ineffective assistance of trial counsel, the PCR court summarized the testimony during the PCR hearing as follows:

> The Applicant testified that he was "locked up" before trial and saw trial counsel around September of 2003.  Originally, he was assigned a different attorney from the public defender's office, and he had met with an investigator and one of the other assigned attorneys.  The Applicant often wrote to trial counsel's office requesting a copy of his file.  When he did meet with trial counsel, he was informed that his file was not complete.  Trial counsel inquired as to how the Applicant would feel about lesser charges, i.e. a gun charge.  Applicant was told trial counsel would meet at a later time to finish discussing the case.  The Applicant was told by trial counsel that a plea to fifteen (15) years was better than twenty (20) years after a trial. The Applicant testified that he was not comfortable going to trial after only an hour or so of going over materials and that he was never presented with his discovery materials.  After the first trial ended in a hung jury, the Applicant never saw trial counsel before the second trial.  He testified he was offered several plea deals: 15, 12, 10, and then 8 years, but that no deal is a good deal if innocent.  The Applicant testified that trial counsel seemed mad that Applicant would not plea.
> The Applicant testified that he and the others were in a minivan and pulled up to the store to see the owner standing outside with a gun, the Applicant reached



for a gun and a gun fight erupted, outside the store. The Applicant was shot. The Applicant did fire shots at the store owner, but that there was never an attempted armed robbery. The Applicant could not plea to something he did not do. Before the second trial, Applicant wanted a continuance and even attempted to ask the judge himself. He never had an opportunity to meet with trial counsel to discuss the case, trial counsel only wanted to talk about a plea.

About the second trial, Applicant testified that nothing was done regarding a situation when a juror was observed speaking to one of the victims. The Applicant testified that the solicitor had blue tennis shoes taken from his [Applicant] Aunt's house, that the victim testified that the Applicant had blue tennis shoes on when the Applicant put a gun to his head. The Applicant explained that there was discrepancy between the victim's statements at the first trial and the second regarding the shoes but that trial counsel was not effective in fully cross-examining the victim regarding the shoes. The Applicant testified that the State was aware that his shoes were taken at the hospital and were not the same ones taken from the Aunt's house. The State knew he did not live at the Aunt's house. The Applicant testified that trial counsel also failed to properly utilize the bullet or shell casing found in the parking lot which supported the Applicant's version of events, i.e. the shooting occurred outside. Trial counsel simply did not do enough to reveal inconsistencies in the testimony of the victims and because this trial mainly concerned credibility of the victims' story versus that of the Applicant and co-defendant, the ineffectiveness of trial counsel's failure to reveal weaknesses/inconsistencies prejudiced him.

Trial counsel, Doug Strickler, testified that originally this case was assigned to different attorneys within the Public Defender's Office. Notes indicate discovery materials were reviewed with the Applicant by his then assigned attorney Jason King sometime in March 2003. Another one of the Applicant's original attorneys had a conflict, but the file notes indicate that she also went over the discovery materials with the Applicant sometime in March 2003. Trial counsel testified that as chief public defender he is responsible for all Richland County public defenders. According to the notes in the file, the Applicant inquired about a plea deal in April 2003. Trial counsel was later assigned the case in May 2003. The notes in the file indicated that the potential issues for trial included the statements from the cousin (the co-defendant) and the lack of blood. Trial counsel recognized that an investigator was needed and utilized the services of both the "in-house" investigator at the public defender's office as well as another crime scene expert (Don Girndt). Trial counsel testified that he met with the Applicant to discuss the case and review discovery materials on August 29, 2003. He conferred with the investigator, the crime scene expert, the prosecutors, and the applicant. In his opinion, "the evidence didn't look that hot" for Applicant.

Trial counsel testified that he met again with the Applicant on the day of the trial in September 2003. During the first trial, Trial counsel did not attempt to elicit testimony from his investigator because it supported the State's version. Regarding plea offers, trial counsel testified that due to two prior convictions for strong armed robbery the Applicant would be looking at fifteen years with a straight-up plea. Trial counsel testified that it was not unusual for the solicitor to offer a better deal when



the jury is deliberating for long periods. Trial counsel testified that Applicant at one point inquired about the possibility of an offer to strong armed robbery for fifteen (15) years, suspended on three (3) years with five (5) years probation. Trial counsel testified that he was prepared for the first trial. He met with Applicant for about an hour and the notes in the file were enough. Trial counsel testified that a discovery request is automatically done when the case is first assigned. This case was first assigned on October 24, 2002.

Trial counsel agreed that the case was ultimately about the credibility of witnesses. There was nothing to impeach the cousin (co-defendant) concerning the letters he wrote from jail because the co-defendant testified consistent with the letter. Trial counsel testified that the angles of the bullets can be argued to support any theory when people are moving around. Based upon his twenty-five (25) years of experience trying homicide cases and based on his judgment, analysis, and conversations with the investigator(s), he "knows" that he would be unable get any knowledgeable expert to state with any degree of certainty that the shots happened in a way other than the State's version.

(App. at 1333-35, ECF No. 22-2 at 154-56.)

### 3.    **Ground Two**[5]

In Ground Two, Sears alleges that trial counsel was ineffective in misstating during his opening statement to the jury the number of times Sears was shot. Specifically, Sears argues that he was shot five times by Patterson, but trial counsel stated on five occasions in his opening argument that Sears was shot eight times by Patterson. In rejecting this claim, the PCR court found the following:

Applicant claims that Trial Counsel's misstatement in opening statement before the jury about the number of times Applicant was shot conflicted with the testimony of Dr. Bynoe and therefore diminished the credibility of the defense particularly about the lack of blood at the scene.

Based upon all the testimony in this case, this claim is without merit. Any comments made in opening statements to the jury are not evidence. The opening statement serves to inform the jury of the general nature of the action and the issues involved so they can better understand the evidence presented. State v. Brown, 277 S.C. 203, 284 S.E.2d 777 (1981). The evidence that was presented during the course of the trial reveals there were numerous differences in the number of times Applicant

---

[5] Sears has combined his arguments with regard to Grounds One and Four, and therefore, the court similarly addresses these claims together below.



was shot, the number of injuries as a result of being shot and the number of bullets and projectiles recovered. Even if Applicant was shot only five times (instead of the eight stated by Trial Counsel in opening), the medical testimony showed the severity of the injuries, the number of internal organs that were damaged by the bullets, the critical nature of the injuries, and the lengthy hospital stay. All of this testimony certainly lent credibility to the defense employed in the case. Trial Counsel testified he had copies of the medical records and had reviewed them. He was prepared for the examination of the physician who treated Applicant. Any misstatement by Trial Counsel was harmless.

(App. at 1349, ECF No. 22-2 at 170.)

Sears challenges the PCR court's conclusion by first arguing that trial counsel's repeated misstatements were unmistakably deficient conduct and that if trial counsel had asked Sears how many times he had been shot, trial counsel's mistake could have been avoided. Sears also argues that the PCR court misapplied the prejudice prong of the <u>Strickland</u> test, based on his assertions that the PCR court found that erroneous statements in an opening argument cannot be prejudicial and that the PCR court incorrectly found that "there were numerous differences in the number of times Applicant was shot, the number of injuries as a result of being shot and the number of bullets and projectiles that were recovered." (Petr.'s Br. at 12-13, ECF No. 33 at 12-13.)

As initial matter, the PCR court appears to have found that Sears failed to meet the first prong of the <u>Strickland</u> test—that trial counsel's errors were so serious that his performance was below the objective standard of reasonableness guaranteed by the Sixth Amendment to the United States Constitution—and alternatively that, even if trial counsel's performance was deficient, that Sears failed to meet the second prong of the <u>Strickland</u> test—"that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Strickland</u>, 466 U.S. at 694. Upon thorough review of the parties' briefs and the record in this matter, the court finds that Sears cannot demonstrate that the PCR court unreasonably misapplied clearly established federal law as decided by the Supreme Court in rejecting this claim or that the



PCR court made objectively unreasonable factual findings. See Williams, 529 U.S. at 410; 28 U.S.C. § 2254(d), (e)(1). As observed by the Harrington court, "[t]he pivotal question is whether the state court's application of the Strickland standard was unreasonable. This is different from asking whether defense counsel's performance fell below Strickland's standard." Harrington, 131 S. Ct. at 785. Specifically, despite Sears's assertion that the alleged misstatements could have been avoided, Sears himself apparently has offered testimony inconsistent with this argument. (See App. at 992-93, ECF No. 21-3 at 162-63) (testifying that he had eight gunshot wounds, was "hit" at least six times, and had "at least six entry wounds"). Moreover, regardless of whether errors in opening arguments can be prejudicial, Sears has failed to demonstrate that based on the facts in this case, that had trial counsel stated in his opening statement that Sears was shot five times (which would also have been inconsistent with his client's testimony) that the result of Sears's second trial would have been different. Therefore, Sears is not entitled to habeas relief on this ground.

### 4.    Ground Three

In Ground Three, Sears alleges that trial counsel was ineffective by repeatedly failing to impeach the victims with readily available evidence disputing their testimony. Specifically, Sears argues that (1) although Stokes testified that the individual who had the gun to his head was wearing white and blue shoes, trial counsel failed to impeach Stokes using documentation demonstrating that Sears was wearing white and gray shoes that day; (2) although Patterson testified that he was able to identify Sears because Sears's mask fell after Patterson shot him, trial counsel failed to impeach Patterson with an investigative report revealing that when Patterson made his identification he stated that he identified Sears before he put his mask on; and (3) trial counsel failed to impeach Patterson with the fact that before trial, Patterson told the police that Sears and another individual—Kassim



Hosendove—came to his business the day before the incident in an attempt to "case" the business, but Hosendove was in Florida at the time of the offense.

### a.    Procedural Bar

As an initial matter, the respondent argues that Sears's allegations in Grounds Three are procedurally barred.[6]  Specifically, the respondent argues that although these claims were presented to the state appellate courts in Sears's amended petition for a writ of certiorari, these specific issues were not raised to and ruled on by the PCR court or presented in his Rule 59(e) motion.  Therefore, they were not preserved for appellate review under state procedural rules.  See Humbert v. State, 548 S.E.2d 862, 866 (S.C. 2001) (holding that an issue muse be raised to and ruled on by the PCR court to be preserved for appellate review); see also Marlar v. State, 653 S.E.2d 266, 267 (S.C. 2007) ("Because respondent did not make a Rule 59(e) motion asking the PCR judge to make specific findings of fact and conclusions of law on his allegations, the issues were not preserved for appellate review.").  Upon review of the PCR court's order and Sears's *pro se* Rule 59(e) motion, the court agrees that Ground Three(2) was not raised to and ruled on by the PCR court as the issued ruled on by the PCR court was whether trial counsel was ineffective in failing to impeach Patterson with inconsistencies in his testimony between the first and second trial on how he was visually able to identify Sears.  (App. at 1341-42, ECF No. 22-2 at 162-63.)  The PCR court order does not address any allegations about an investigative report.  Similarly, with regard to Ground Three(3) the issue ruled on by the PCR court concerned whether trial counsel was ineffective in failing to impeach the *investigator*, not Patterson.  (App. at 1343, ECF No. 22-2 at 164.)

---

[6] Contrary to Sears's arguments, the court finds that the respondent squarely presented his procedural bar argument with regard to Ground Three(2) in his Return and Memorandum of Law in Support of Summary Judgment.



To the extent that Sears relies on a statement in <u>Harris v. Reed</u>, 489 U.S. 255 (1989), indicating that "a procedural default does not bar consideration of a federal claim on . . . habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on a state procedural bar," in support of his position that these claims are not procedurally defaulted, the court finds this argument unavailing. <u>Id.</u> at 263.  The <u>Coleman</u> Court later explained that the presumption in <u>Harris</u> should only be applied if "it fairly appears that a state court judgment rested primarily on federal law or was interwoven with federal law, that is, in those cases where a federal court has good reason to question whether there is an independent and adequate state ground for the decision." <u>Coleman</u>, 501 U.S. at 739-40.  In this case, the court has no reason to question whether the there is an independent and adequate state ground for the decision. Sears's position that the PCR court did address these claims but simply misunderstood his arguments, making a 59(e) motion unnecessary, is unpersuasive in this case as the "arguments" that the PCR court allegedly misunderstood are clearly different claims which would require analysis of other facts and evidence.  Therefore, these claims are procedurally barred unless Sears can "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice," which he has failed to do.[7]  <u>Coleman</u>, 501 U.S. at 750.  However, with regard to Ground Three(1), the court finds that the substance of this claim was raised to and ruled on by the PCR court

---

[7] Even if the court found that these claims were not procedurally barred, Sears would nonetheless not be entitled to federal habeas relief on these claims for the reasons discussed by the respondent. (<u>See</u> Resp.'s Return & Mem. Supp. Summ. J., ECF No. 20 at 41-49.)  Additionally, with regard to Hosendove, the court observes that co-defendant's counsel cross-examined Patterson and the investigator, highlighting the discrepancies in their testimony regarding Patterson's identification of Hosendove as a suspect.  Sears had failed to show how any additional permissible questioning by his counsel would have further undermined Patterson's credibility.



and therefore was preserved for appellate review. Accordingly, the court addresses the merits of Ground Three(1) below.

### b.    Merits

In rejecting Sears's allegations that trial counsel was ineffective in failing to cross-examine Stokes concerning the color of the shoes that the individual holding the gun to his head was wearing, the PCR made the following relevant findings:

> The solicitor at trial said Applicant was wearing blue tennis shoes. According to Applicant, white shoes were taken from his aunt's house. Applicant asserts this is important because the victim testified he was on the floor with a gun held to his head and all he could see were the shoes of the person holding the gun. Applicant states that Trial Counsel asked about the shoes during cross examination but failed to follow through to impeach the victim. The property records in the sheriff's office could have been used to impeach the witness. Trial Counsel has no recollection of the shoe issue. Whatever the record reflects is what he did.
>
> Applicant claims the victim's testimony was that the person holding the gun to his head was wearing blue shoes. Copies of the pages attached by Applicant state that the person with the gun was wearing blue and white shoes. The property report form of the shoes taken from Applicant at the hospital states the shoes were white and gray Nike shoes. The consent to search form signed to allow the search of the co-defendant's home contains a description of the property to be <u>searched</u> (emphasis added): "guest room, white/blue Nike shoes, black shorts, and gray sweatpants". This does not appear to be a description of the property actually recovered during the search as Applicant suggests.
>
> . . . . The witnesses did not testify that the shoes were blue. Again the victim's testimony was that the shoes were blue and white. Whether the shoes were blue and white or gray and white is not significant without a visual reference to the shoes. The trial testimony has always been consistent that the shoes were blue and white. The document referred to by the victim during his testimony was a robbery questionnaire containing the information provided to the police that day. Shortly after the incident occurred that day, the description given of the person, who pushed the victim to the floor, put a gun to his head, and dragged him, was a gray shirt, white and blue shoes—court shoes. . . . .
>
> Additionally, this Court finds no resulting prejudice from trial counsel's purported failure to fully examine whether the shooter's shoes were gray and white or blue and white. It was trial counsel who cross-examined the victim regarding the color of the shoes. The Applicant's PCR application and arguments raise allegations that trial counsel failed to properly cross-examine the victim when he claimed that the Applicant was wearing "blue" shoes. According to the Applicant, other evidence exists to show that he was wearing white shoes. At first blush, this appears to be a



significant issue: a victim testifying the Applicant was wearing blue shoes and trial counsel not utilizing a report indicating the shoes were white. However, a full review reveals that the victim actually testified the Applicant was wearing blue and white shoes (not just blue), while the evidence purportedly not exploited by trial counsel shows that the Applicant was wearing gray and white shoes (not just white). It was trial counsel who questioned the victim about the shoe color and brought this evidence to the jury's attention. Accordingly, this claim is without merit.

(App. at 1339-40, ECF No. 22-2 at 160-61.) Additionally, the court observes that the PCR court, in addressing other claims alleging that trial counsel was ineffective in failing to impeach the victims with various items, made the following conclusions and findings:

> The nature and scope of cross-examination is inherently a matter of trial tactics. United States v. Nersesian, 824 F.2d 1294, 1321 (2nd Cir. 1987). "[A] defendant has a 'burden of supplying sufficiently precise information', of the evidence that would have been obtained had his counsel undertaken the desired investigation and of showing 'whether such information . . . would have produced a different result.'" United States v. Rodriguez, 53 F.3d 1439, 1449 (7th Cir. 1995). The Applicant did not proffer any questions counsel allegedly failed to ask, and did not present any testimony showing that the witnesses' answers at trial would have been materially different. Accordingly, the Applicant has not shown that a different approach to cross-examination would have been beneficial to the defense. While a second trial is certainly advantageous to a defendant in that there has been a preview of exactly what to expect at the second trial, this Court notes that a mistrial, and subsequent retrial, can also present a difficult situation for defense counsel. Given a second opportunity to try a case, the State is able to see what techniques and testimony were effective in the prior trial and bolster and strengthen their case during the second trial.

(App. at 1341, ECF No. 22-2 at 162.)

In arguing that he is entitled to federal habeas relief, Sears argues that to the extent the PCR court found that trial counsel's lack of cross-examination or impeachment was not deficient, such a finding was unreasonable. Sears also argues that pursuing impeachment regarding the color of the shoes or when Patterson was able to observe the face of the individual he identified as Sears would have strengthened his defense, furthered his position that the victims were lying about the incident,

and reduced the credibility of both of the victims. Therefore, Sears argues, the PCR court erred in finding that Sears was not prejudiced by trial counsel's alleged deficiencies.

Upon thorough review of the parties' briefs and the record in this matter, the court finds that Sears cannot demonstrate that the PCR court unreasonably misapplied clearly established federal law as decided by the Supreme Court in rejecting this claim or that the PCR court made objectively unreasonable factual findings. See Williams, 529 U.S. at 410; 28 U.S.C. § 2254(d), (e)(1). As observed by the Harrington court, "[t]he pivotal question is whether the state court's application of the Strickland standard was unreasonable. This is different from asking whether defense counsel's performance fell below Strickland's standard." Harrington, 131 S. Ct. at 785. Upon careful review of the transcript and the PCR court's order, for all of the reasons discussed by the PCR court, the court concludes that Sears has failed to establish that trial counsel's actions were error, much less that they were objectively unreasonable such that it rendered his performance deficient. As observed by the PCR court, "[w]hether the shoes were blue and white or gray and white is not significant without a visual reference to the shoes." Further, in light of Stokes's consistent statements that the shoes were blue and white, Sears failed to demonstrate how specifically trial counsel could have used the hospital record to impeach Stokes or otherwise show that the result of the proceeding would have been different. Strickland, 466 U.S. at 694. Therefore, Sears has not shown that the PCR court's analysis of these issues misapplied clearly established federal law or, even if there was an error, that it was unreasonable. See Williams, 529 U.S. at 410; see also Harrington, 131 S. Ct. at 785.

### 5.    Grounds One and Four

In Sears's first ground for relief, he alleges that trial counsel was ineffective in failing to prepare for trial and failing to meet with him prior to trial. Specifically, Sears alleges that trial counsel met with him for 1.1 hours before his first trial, which resulted in a mistrial, and did not meet



with him prior to his second trial. Sears argues that this allegation of deficiency and the allegations

detailed above demonstrate trial counsel's lack of preparation, which prejudiced him. Sears's claim

of prejudice is similar to his claims in Ground Four. In Ground Four, Sears alleges that trial counsel

was ineffective based on his cumulative errors at trial and argues that the cumulative effect of these

errors warrants the granting of a new trial even if, standing alone, each error would not warrant a new

trial.

 In rejecting these claims, the PCR court made the following relevant findings:

> This court finds, further, that the Applicant's allegation that trial counsel did not conduct an adequate pre-trial investigation is without merit. The "brevity of time spent in consultation, without more, does not establish that counsel was ineffective." Harris v. State, 377 S.C. 66, 659 S.E.2d 140, quoting Easter v. Estelle, 609 F.2d 756, 759 (5th Cir. 1980). When claims of ineffective assistance of counsel are based on lack of preparation time, an Applicant challenging his conviction must show specific prejudice resulting from counsel's alleged lack of time to prepare. United States v. Cronic, 466 U.S. 648 (1984); U.S. v. LaRouche, 896 F.2d 815 (4th Cir. 1990). Here, the Applicant could not point to any specific matters counsel failed to discover aside from his other allegations of ineffective assistance of counsel, for failing to utilize certain theories presented by the Applicant, and other speculative issues. As discussed herein, this Court finds those allegations without merit, and therefore, this allegation is also without merit. "Failure to conduct an independent investigation does not constitute ineffective assistance of counsel when the allegation is supported only by mere speculation as to the result." Lorenzen v. State, 376 S.C. 521, 657, S.E.2d 771 (2008), quoting Moorehead v. State, 329 S.C. 329, 496 S.E.2d 415 (1998).
>
> . . . .
>
> The Uniform Post-Conviction Procedure Act requires the Applicant to "specifically set forth the grounds upon which the application is based." S.C. Code Ann. § 17-27-50 (Rev. 2003); Miller v. State, 377 S.C. 99, 659 S.E.2d 492 (2008); Welch v. MacDougall, 246 S.C. 258, 143 S.E.2d 455 (1965); Blandshaw v. State, 245 S.C. 385, 140 S.E.2d 784 (1965). This allegation is vague. Since the Applicant has not made the minimum prima facie showing, the Court should dismiss this ground for failure to comply with the Uniform Post-Conviction Procedure Act. In addition, there is no current precedent to support the theory that cumulative errors that are by themselves not prejudicial can be used as a whole to establish prejudice. Lorenzen v. State, supra.

(App. at 1337, 1352, ECF No. 22-2 at 158, 173.)



In response to the respondent's motion for summary judgment, Sears appears to concede that with regard to his independent claim of cumulative error, such a claim has been rejected by the United States Court of Appeals for the Fourth Circuit. See Fisher v. Angelone, 163 F.3d 835, 852 (4th Cir. 1998). Therefore, Sears is not entitled to relief on this ground. However, Sears argues that the alleged cumulative errors support a finding that he was prejudiced by trial counsel's alleged lack of preparation and failing to meet with Sears more prior to trial. Upon thorough review of the trial transcript, the PCR transcript, and the PCR court order, the court finds that like his other allegations, Sears cannot demonstrate that the PCR court unreasonably misapplied clearly established federal law as decided by the Supreme Court in rejecting his claims regarding preparation or that the PCR court made objectively unreasonable factual findings. See Williams, 529 U.S. at 410; 28 U.S.C. § 2254(d), (e)(1); see also Harrington, 131 S. Ct. at 785. Sears has failed to establish that trial counsel's actions were error, much less that they were objectively unreasonable such that it rendered his performance deficient. Sears has failed to demonstrate that additional time speaking with him or additional preparation would have changed the result of the proceeding.[8] Strickland, 466 U.S. at 694. Therefore, Sears has not shown that the PCR court's analysis of these issues misapplied clearly established federal law or, even if there was an error, that it was unreasonable. See Williams, 529 U.S. at 410; see also Harrington, 131 S. Ct. at 785.

---

[8] Upon review of both transcripts, the court rejects Sears's characterization of trial counsel's attitude as cavalier based on one response during the PCR hearing, as it is unsupported and taken out of context.



**RECOMMENDATION**

For the foregoing reasons, the court recommends that the respondent's motion for summary

judgment (ECF No. 19) be granted.

_____
Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

February 7, 2014
Columbia, South Carolina

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).