IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ROCK HILL DIVISION

| | |
|---|---|
| Demetrio Sears, <br><br> PETITIONER <br><br> v. <br><br> Warden David Dunlap, *Walden Correctional Institution*, <br><br> RESPONDENT | C/A No. 0:13-cv-00688-TLW <br><br><br> **Order** |

Petitioner Demetrio Sears submitted a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Doc. #1.) On August 19, 2013, Respondent filed a motion for summary judgment and memorandum in support. (Docs. #19, 20.) On November 6, 2013, Sears filed a response to the motion. (Doc. #42.) On February 7, 2014, Magistrate Judge Gossett issued a Report and Recommendation ("Report"), recommending granting the motion for summary judgment. (Doc. #35.) After receiving an extension, Sears timely filed objections on March 10, 2014. (Doc. #38.) This matter is now ripe for decision.

## I.    Procedural History

Sears was indicted in December 2002 in Richland County for attempted armed robbery. (Doc. #22-2 at 176–77.) He was represented by Douglas Stricker, the Chief Public Defender in Richland County. (*Id.* at 155.) His first trial began on September 23, 2003 and resulted in a mistrial after a hung jury. (*Id.* at 153.) He was tried a second time, beginning on January 5, 2004, and was found guilty. (Doc. #22-1 at 171.) He was sentenced to 18 years imprisonment. (Doc. #22-2 at 5.)

1

Sears timely appealed and was represented by Joseph Savitz III, who filed an *Anders*[1] brief on Sears' behalf. (Doc. #23-3.) On February 24, 2006, the South Carolina Court of Appeals dismissed his appeal. (Doc. #23-5.) The Court of Appeals issued the remittitur on March 14, 2006. (Doc. #23-6.)

On March 20, 2006, Sears filed a *pro se* application for post-conviction relief ("PCR") alleging various claims of ineffective assistance of counsel. (Doc. #25-1.) After Sears filed multiple amendments, (Doc. #22-2 at 6–46), and the State filed a return, (*id.* at 47–51), the PCR court held an evidentiary hearing on February 20, 2008, (*id.* at 52–151). He appeared and was represented by Charles Johnson. (*Id.* at 52.) On December 22, 2009, the PCR court issued an order denying the PCR application. (*Id.* at 152–75.) On March 19, 2010, Sears filed a *pro se* Rule 59(e) motion, (Doc. #24-1), which was denied as untimely, (Doc. #24-2).

On January 21, 2011, Sears filed a *pro se* petition for writ of certiorari. (Doc. #24-8.) He then retained Jeremy Thompson, who filed an amended petition that narrowed the issues on appeal. (Doc. #24-12.) The State filed a return and amended return, (Docs. #24-9, 24-13), and Sears filed a reply, (Doc. #24-14). On September 20, 2012, the South Carolina Supreme Court denied the petition. (Doc. #24-15.) He filed a petition for rehearing, (Doc. #24-16), which was also denied, (Doc. #24-17). The remittitur was issued on October 31, 2012. (Doc. #24-18.) This action followed.

## II.   Facts

The Report thoroughly and accurately summarizes the factual background of this case,

---

[1] *Anders v. California*, 386 U.S. 738 (1967).

and Sears has no objection to the summary. (Doc. #38 at 1 n.1.) Accordingly, the Court incorporates the following factual summary from the Report:

> Sears and Willie Alexander ("Alexander") were indicted and tried together for attempted armed robbery based on allegations that these codefendants, along with a third individual, attempted to rob Ntense Kustoms and Car Audio.[] This alleged incident resulted in Sears receiving numerous gunshot wounds from Sterling Patterson. Sears alleges that the primary issues at trial were how the shooting had occurred and whether Patterson or Sears was the true criminal. Testimony during the PCR hearing revealed that credibility of the witnesses was a major issue at trial.
>
> During the trial, Patterson testified that on the morning of the incident he returned from the bank to his business, Ntense Kustoms and Car Audio, and as he was speaking to his employee[,] Andrae Stokes ("Stokes"), Patterson saw a van pull up in front of his business. Patterson stated that he saw at least two individuals with guns get out of the van and one had a rag or something over his face. Patterson indicated that he ran and retrieved a firearm from his office and when he returned to the doorway of the showroom with his weapon raised there were three individuals in his store. Patterson stated that two of the individuals fled and the third individual was standing over Stokes with a gun to Stokes's head. Patterson indicated that he fired his weapon and when the individual standing over Stokes then pointed his gun at Patterson, Patterson pointed his weapon towards that individual hitting him. Patterson described the individual standing over Stokes, whom he later identified as Sears, as light-skinned and indicated that the individual's mask fell down as he was being shot and Patterson was able to see his face. Patterson stated as the individual was fleeing, he fell through the front door to the business and indicated that the glass door was shot when Patterson was firing. Patterson then testified that he returned to his office to retrieve more ammunition and heard what sounded like a car leaving the scene. Patterson stated that he and Stokes called 9-1-1 and attempted unsuccessfully to follow the individuals. (See [] ECF No. 20-2 at 63–73, 87–90, 102–03.) Stokes's testimony on the version of events was similar to Patterson's account, but Stokes was unable to identify any of the individuals. (See [] ECF No. 20-1 at 144 through ECF No. 20-2 at 15.)
>
> Sears, however, presented a different version of events. Sears testified that he, Alexander, and a third individual (Tashim Vann) traveled together to Patterson's business on the way to a job interview Sears had scheduled. Sears stated that when they arrived at Patterson's business, he exited the vehicle first and saw Patterson standing outside with a gun. Sears testified that he retrieved Vann's gun from the vehicle and when Patterson raised his gun, he responded by raising his gun. Sears stated that Patterson fired his weapon at him striking him several times and Sears may have fired his weapon. Sears stated he returned to the van barely conscious, they drove away, and he lost consciousness. ([] ECF No. 21-3 at 133–39, 145–52.) Alexander's testimony on the version of events was similar

3

> to Sears's account.  ([] ECF No. 21-3 at 24–41.)
>
> Sears's defense at trial was that Patterson had manufactured the scene to conceal the fact that he had opened fire on Sears.  In support of this defense, Sears argued that, undermining the version of events presented by Patterson and Stokes, no blood was found at the crime scene despite the nature of Sears's injuries; that Sears did not have any cuts from going through a glass door; and that all of the shell casings found at the business matched Patterson's firearm.  ([] ECF No. 22-1 at 103–17.)

(Doc. #35 at 9–11.)

## III.    Standards of Review

### A.    Report and Recommendation

In reviewing the Magistrate Judge's recommendation, the Court applies the following standard:

> The magistrate judge makes only a recommendation to the Court, to which any party may file written objections . . . .  The Court is not bound by the recommendation of the magistrate judge but, instead, retains responsibility for the final determination.  The Court is required to make a de novo determination of those portions of the report or specified findings or recommendation as to which an objection is made.  However, the Court is not required to review, under a de novo or any other standard, the factual or legal conclusions of the magistrate judge as to those portions of the report and recommendation to which no objections are addressed.  While the level of scrutiny entailed by the Court's review of the Report thus depends on whether or not objections have been filed, in either case the Court is free, after review, to accept, reject, or modify any of the magistrate judge's findings or recommendations.

*Wallace v. Hous. Auth. of City of Columbia*, 791 F. Supp. 137, 138 (D.S.C. 1992) (citations omitted).

4

### B.   Summary Judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Summary judgment is required "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).   The party opposing summary judgment may not rest on the allegations in his pleading.  *Kimsey v. City of Myrtle Beach*, 109 F.3d 194, 195 (4th Cir. 1997). "Conclusory or speculative allegations do not suffice, nor does a mere scintilla of evidence in support of [the nonmoving party's] case." *Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 649 (4th Cir. 2002).

"[F]acts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts."  *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009).  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

### C.   Habeas Petitions

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), claims adjudicated on the merits in a state court proceeding cannot be a basis for federal habeas corpus relief unless the decision was "contrary to, or involved an unreasonable application of clearly established federal law as decided by the Supreme Court of the United States," or the decision "was based on an unreasonable determination of the facts in light of the evidence presented in

5

the state court proceeding." 28 U.S.C. § 2254(d)(1), (2). When reviewing a state court's application of federal law, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Williams v. Taylor*, 529 U.S. 362, 410 (2000); *see also Harrington v. Richter*, 131 S. Ct. 770, 785 (2011). State court factual determinations are presumed to be correct and the petitioner has the burden of rebutting this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington*, 131 S. Ct. at 786 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). A state court's decision "must be granted a deference and latitude that are not in operation" when the case is being considered on direct review. *Id.* at 785. Additionally, review of a state court decision under this standard does not require an opinion from the state court explaining its reasoning. *See id.* at 784 (finding that "[t]here is no text in [§ 2254] requiring a statement of reasons" by the state court). If no explanation accompanies the state court's decision, a federal habeas petitioner must show that there was no reasonable basis for the state court to deny relief. *Id.* Pursuant to § 2254(d), a federal habeas court must (1) determine what arguments or theories supported or could have supported the state court's decision; and then (2) ask whether it is possible that fair-minded jurists could disagree that those arguments or theories are inconsistent with the holding of a prior decision of the United States Supreme Court. *Id.* at 786. "If this standard is difficult to meet, that is because it was meant to be." *Id.* Section 2254(d) codifies the view that habeas corpus is a "'guard against extreme malfunctions in the state criminal justice

systems,' not a substitute for ordinary error correction through appeal." *Id.* (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979) (Stevens, J., concurring in judgment)).

## IV. Discussion

Sears has raised four separate grounds for relief: (1) trial counsel was ineffective for failing to sufficiently prepare for trial and meet with Sears prior to trial; (2) trial counsel was ineffective during his opening statement by incorrectly stating the number of times that Sears was shot; (3) trial counsel was ineffective in failing to impeach the victims' testimony with evidence that cast doubt on their accounts; and (4) trial counsel's cumulative errors prejudiced Sears.

### A. Ground 1

In Sears' first ground for relief, he asserts that he is entitled to relief because trial counsel met with Sears on only one occasion for 1.1 hours prior to his first trial and did not meet with him again before his second trial. (Doc. #35 at 5.) He asserts that trial counsel made numerous mistakes during the trial that could have been corrected through additional preparation. (*Id.*)

At the PCR hearing, trial counsel testified as to his investigation into the case and pre-trial preparation. (Doc. #22-2 at 119–40.) The file was initially assigned to another attorney in the public defender's office who met with Sears twice at the county jail. That attorney left the office and the file was assigned to a second attorney, who quickly realized that she had a conflict of interest. The file was then reassigned to a third attorney who met with Sears in person at least once and had several phone conversations with him. The third attorney then left the office and

7

trial counsel then assigned the case to himself.

At that point, trial counsel reviewed the file, including several notes and file memoranda from the other attorneys regarding their meetings with Sears and their thoughts on the case. The notes indicated that at least one of the prior attorneys had reviewed the discovery with him, as well as the pros and cons of the case with him. The office's in-house investigator was already looking into aspects of the case, and trial counsel met with the investigator and made arrangements to hire a crime scene expert. At that point, trial counsel met with Sears. They met for about eight-tenths of an hour, and trial counsel reviewed the discovery and Sears' situation with him. Trial counsel then met with his in-house investigator and crime scene expert, then the prosecutors, then with Sears again that same day for another three-tenths of an hour. The second discussion with Sears included "the fact that the evidence didn't look that hot for [them]."

Trial counsel and Sears then met again on the date of trial. Trial counsel told Sears that their crime scene expert's findings supported the State's contention, including that the shooting could have taken place inside as described by the State's witnesses, and that the shattered glass in the front door looked like a body had gone through it, which also supported the State's position and directly contradicted Sears' version of events. However, Sears still indicated that he wanted a trial.

After the first trial resulted in a hung jury, trial counsel did not meet with Sears again until the second trial. However, trial counsel had obtained copies of relevant portions of the first trial transcript to impeach any witnesses if necessary. He testified that he did not request or need a continuance for the second trial because he was prepared to go to trial.

In rejecting Sears' argument, the PCR court made the following findings:

> This court finds, further, that the Applicant's allegation that trial counsel did not conduct an adequate pre-trial investigation is without merit. The "brevity of time

8

spent in consultation, without more, does not establish that counsel was ineffective. *Harris v. State*, 377 S.C. 66, 659 S.E.2d 140, quoting *Easter v. Estelle*, 609 F.2d 756, 759 (5th Cir. 1980). When claims of ineffective assistance of counsel are based on lack of preparation time, an Applicant challenging his conviction must show specific prejudice resulting from counsel's alleged lack of time to prepare. *United States v. Cronic*, 46 U.S. 648 (1984); *U.S. v. LaRouche*, 896 F.2d 815 (4th Cir. 1990). Here, the Applicant could not point to any specific matters counsel failed to discover aside from his other allegations of ineffective assistance of counsel, for failing to utilize certain theories presented by the Applicant, and other speculative issues. As discussed herein, this Court finds those allegations without merit, and therefore, this allegation is also without merit. "Failure to conduct an independent investigation does not constitute ineffective assistance of counsel when the allegation is supported only by mere speculation as to the result." *Lorenzen v. State*, 376 S.C. 521, 657 S.E.2d 771 (2008), quoting *Moorehead v. State*, 329 S.C. 329, 496 S.E.2d 415 (1998).

Sears has not shown that the PCR court's analysis of this issue misapplied clearly established federal law as decided by the Supreme Court or, even if the PCR court did make such an error, that it was unreasonable. *See* 28 U.S.C. § 2254(d), (e)(1); *Harrington*, 131 S. Ct. 770, 785 (2011); *Williams*, 529 U.S. 362, 410 (2000). Accordingly, Sears is not entitled to relief on this ground.

**B.     Ground 2**

In Sears' second ground for relief, he asserts that he is entitled to relief because, during trial counsel's opening statement, he incorrectly stated the number of times that Sears had been shot. He asserts that this error was so serious that trial counsel's performance was below the objective standard of reasonableness guaranteed by the Sixth Amendment and "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 687–88, 694 (1984). The Court disagrees.

Sears argues that the Court should not apply § 2254's deferential standard of review

because the PCR court made an unreasonable application of clearly established federal law by "conclud[ing] that any misstatements made during opening statements cannot be prejudicial as a matter of law." (Doc. #38 at 4.) The PCR court did not reach that precise conclusion, but even if that was the PCR court's conclusion, it is not necessary for this Court to decide whether that was an unreasonable application of clearly established federal law because Sears is not entitled to relief even under a *de novo* review.

There was much confusion at trial about the number of times that Sears was shot. His treating physician testified that Sears had seven wounds: an entrance wound to his abdomen, two entrance wounds in his chest, two exit wounds in his back, and two wounds in his hand. (Doc. #21-1 at 82–83.) The physician testified that the entrance wounds in Sears' chest corresponded with the exit wounds in his back and that the two wounds in his hand could have been an entrance and exit wounds from the same bullet or could have been from two separate bullets. (*Id.*) However, the physician then confirmed the prosecutor's summary of Sears' injuries as consisting of a maximum of three gunshot "wounds" to the body and two to the hand, even though they had just finished talking about a total of seven wounds. (*Id.* at 82–83).

Sears' testimony was marginally helpful in relieving the confusion. He testified as follows:

> I have at least six entry wounds. At least. I have eight wounds in all. I have two on my side. I have two on my back. I have one in my stomach. I have one right here on my shoulder.[2] And I've got two in my hand. So I've got at least eight.

(Doc. #21-3 at 163.) He then went on to testify that he was hit with a total of six bullets. (*See id.* at 164–65.)

Taking together the physician's and Sears' testimony, it is reasonable to conclude that

---

[2] The shoulder wound was not discussed by the physician.

10

Sears was hit with either five or six bullets, resulting in eight wounds: one entrance wound to the abdomen from the first bullet, two entrance wounds to the chest and two exit wounds to the back from the second and third bullets, one wound to the shoulder from the fourth bullet, and two wounds to the hand from either the fifth and sixth bullets or an entrance and exit wound from a single bullet.

During trial counsel's opening statement, he stated several times that Sears was "shot" eight times. (Doc. #20-1 at 59–61.) This was, at best, only a slight mischaracterization of the evidence. To be completely accurate, trial counsel could have stated that Sears was shot five or six times, resulting in eight wounds.[3] Sears testified that he had "eight wounds." Thus, the question here is whether stating during opening argument that Sears was shot eight times when he was really shot five or six times, resulting in eight wounds, was such a serious misstatement that trial counsel's performance fell below the objective standard of reasonableness guaranteed by the Sixth Amendment and "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 687–88, 694. Stated simply, the jury was not misled and Sears can show no prejudice based on trial counsel's opening statement. After reviewing the issue *de novo*, this Court concludes that Sears has no basis for relief on either *Strickland* prong and is therefore not entitled to relief on this ground.

---

[3] It is worth noting that the co-defendant's counsel also stated during his opening statement that Sears was shot eight times. (*See* Doc. #20-1 at 59) ("And there was, by the evidence that you'll hear, at least 11 shots fired, 8 of which landed in one of the people.").

11

C.  **Ground 3**

In Sears' third ground for relief, he asserts that he is entitled to relief because trial counsel was ineffective in repeatedly failing to impeach the victims with readily-available evidence disputing their testimony.

1.  *Ground 3(1)*

In this ground, Sears argues that, although Stokes testified that the person who had a gun to his head was wearing white and blue shoes, trial counsel failed to impeach Stokes using documentation demonstrating that Sears was wearing white and gray shoes that day. On this argument, the PCR court made the following findings and conclusions:

> The solicitor at trial said Applicant was wearing blue tennis shoes. According to Applicant, white shoes were taken from his aunt's house. Applicant asserts this is important because the victim testified he was on the floor with a gun held to his head and all he could see were the shoes of the person holding the gun. Applicant states that Trial Counsel asked about the shoes during cross examination but failed to follow through to impeach the victim. The property records in the sheriff's office could have been used to impeach the witness. Trial Counsel has no recollection of the shoe issue. Whatever the record reflects is what he did.
>
> Applicant claims the victim's testimony was that the person holding the gun to his head was wearing blue shoes. Copies of the pages attached by Applicant state that the person with the gun was wearing blue and white shoes. The property report form of the shoes taken from Applicant at the hospital states the shoes were white and gray Nike shoes. The consent to search form signed to allow the search of the co-defendant's home contains a description of the property to be searched (emphasis added): "guest room, white/blue Nike shoes, black shorts, and gray sweatpants". This does not appear to be a description of the property actually recovered during the search as Applicant suggests.
>
> . . . .
>
> The witnesses did not testify that the shoes were blue. Again the victim's testimony was that the shoes were blue and white. Whether the shoes were blue and white or gray and white is not significant without a visual reference to the

12

> shoes. The trial testimony has always been consistent that the shoes were blue and white. The document referred to by the victim during his testimony was a robbery questionnaire containing the information provided to the police that day. Shortly after the incident occurred that day, the description given of the person, who pushed the victim to the floor, put a gun to his head, and dragged him, was a gray shirt, white and blue shoes—court shoes.
>
> . . . .
>
> Additionally, this Court finds no resulting prejudice from trial counsel's purported failure to fully examine whether the shooter's shoes were gray and white or blue and white. It was trial counsel who cross-examined the victim regarding the color of the shoes. The Applicant's PCR application and arguments raise allegations that trial counsel failed to properly cross-examine the victim when he claimed that the Applicant was wearing "blue" shoes. According to the Applicant, other evidence exists to show that he was wearing white shoes. At first blush, this appears to be a significant issue: a victim testifying the Applicant was wearing blue shoes and trial counsel not utilizing a report indicating the shoes were white. However, a full review reveals that the victim actually testified the Applicant was wearing blue and white shoes (not just blue), while the evidence purportedly not exploited by trial counsel shows that the Applicant was wearing gray and white shoes (not just white). It was trial counsel who questioned the victim about the shoe color and brought this evidence to the jury's attention. Accordingly, this claim is without merit.

(Doc. #22-2 at 160–61.)   The PCR court also made the following findings and conclusions regarding the scope of cross-examination:

> The nature and scope of cross-examination is inherently a matter of trial tactics. *United States v. Nersesian*, 824 F.2d 1294, 1321 (2nd Cir. 1987). "[A] defendant has a 'burden of supplying sufficiently precise information,' of the evidence that would have been obtained had his counsel undertaken the desired investigation and of showing 'whether such information . . . would have produced a different result.'" *United States v. Rodriguez*, 53 F.3d 1439, 1449 (7th Cir. 1995). The Applicant did not proffer any questions counsel allegedly failed to ask, and did not present any testimony showing that the witnesses' answers at trial would have been materially different. Accordingly, the Applicant has not shown that a different approach to cross-examination would have been beneficial to the defense. While a second trial is certainly advantageous to a defendant in that there has been a preview of exactly what to expect at the second trial, this Court notes that a mistrial, and subsequent retrial, can also present a difficult situation for defense counsel. Given a second opportunity to try a case, the State is able to see what techniques and testimony were effective in the prior trial and bolster and strengthen their case during the second trial.

(*Id.* at 162.)

13

Sears first argues that this Court should not apply § 2254's deferential standard of review to *Strickland*'s deficiency prong, and should therefore review the issue *de novo*, because the PCR court did not explicitly address the deficiency prong in its order.[4] This is incorrect. While Sears is correct that this particular section of the PCR court's order did not explicitly address the deficiency prong, in its conclusion, the PCR court found that trial counsel was not deficient in any manner. (Doc. #22-2 at 174) ("[T]his Court finds Applicant has failed to prove the first prong of the *Strickland* test—counsel failed to render reasonably effective assistance under prevailing professional norms. . . . [T]his Court finds and concludes that the Applicant has not established any constitutional violations or deprivations that would require this court to grant his application. Counsel was not deficient in any manner . . . ."). Accordingly, this Court concludes that it is appropriate to review the PCR court's conclusions under § 2254's deferential standard of review.

After careful review of the parties' briefs, the record, the PCR court's order, and the Report, the Court concludes that the PCR court did not unreasonably apply clearly established federal law or make objectively unreasonable factual findings. *See* 28 U.S.C. § 2254(d)(1), (2); *Williams*, 529 U.S. at 410. Because the PCR court's application of the *Strickland* standard was not unreasonable, for all of the reasons stated by the PCR court and the Report, Sears is not entitled to relief on this ground.

    2.    *Ground 3(2)*

In this ground, Sears argues that although Patterson testified that he was able to identify

---

[4] Sears does not contend that the PCR court's analysis of the prejudice prong should be reviewed *de novo*.

Sears because his mask fell after Patterson shot him, trial counsel failed to impeach Patterson with an investigative report revealing that when Patterson made his identification, he stated that he identified Sears before he put his mask on.  Respondent argues, and the Report agrees, that this ground is barred because it was not raised to and ruled on by the PCR court.  The Court agrees with Respondent.

A petitioner in state custody seeking § 2254 relief must first exhaust all remedies available in state court.  28 U.S.C. § 2254(b)(1)(A).  "[T]he exhaustion requirement is satisfied so long as a claim has been 'fairly presented' to the state courts."  *Baker v. Corcoran*, 220 F.3d 276, 288 (4th Cir. 2000) (quoting *Picard v. Connor*, 404 U.S. 270, 275 (1971)).  To fairly present a claim, the petitioner must present to the state court the "substance of his federal habeas corpus claim," which must include "both the operative facts and the controlling legal principles." *Matthews v. Evatt*, 105 F.3d 907, 911 (4th Cir. 1997) (internal quotations omitted), *overruled on other grounds by United States v. Barnette*, 644 F.3d 192 (4th Cir. 2011).  "The ground relied upon must be presented face-up and squarely; the federal question must be plainly defined.  Oblique references which hint that a theory may be lurking in the woodwork will not turn the trick."  *Mallory v. Smith*, 27 F.3d 991, 995 (4th Cir. 1994) (citation omitted).

A non-exhausted claim may be treated as exhausted if the claim would be procedurally barred under state law if the petitioner now attempted to present it.  *Baker*, 220 F.3d at 288.  However, if that procedural bar rests on an independent and adequate state law ground, it prevents federal habeas review unless the petitioner establishes cause and prejudice.  *Id.* (citing *Gray v. Netherland*, 518 U.S. 152, 162 (1996)).  To show cause, the petitioner must show that something external prevented him from complying with the state procedural rule.  *Coleman v. Thompson*, 501 U.S. 722, 753 (1991).  To show prejudice, the petitioner must show that he was

15

"actually prejudiced" by the alleged violation of federal law.  *United States v. Frady*, 456 U.S. 152, 168 (1982).

Here, Sears' claims regarding trial counsel's failure to utilize the investigation report were not raised to and ruled on by the PCR court, and are therefore non-exhausted.  His claims are now procedurally barred in state court by the time limitations in S.C. Code Ann. § 17-27-45(A) (2003), which, as applied to Sears' case, provides that a PCR application must be filed within one year of the sending of the remittitur to the lower court from an appeal.  The application of § 17-27-45(A) is an independent and adequate state law ground.  *See Williams v. French*, 146 F.3d 203, 209 (4th Cir. 1998) (holding that North Carolina's statutory time limitation on post-conviction relief was an independent and adequate state law ground).  Sears has not demonstrated cause and prejudice to overcome this procedural default.  His claim is therefore procedurally barred and he is not entitled to relief on this ground.  Additionally, even if the Court were to reach the merits of this argument, Sears would not be entitled to relief for the reasons discussed by Respondent.  (*See* Doc. #20 at 41–45.)

3. *Ground 3(3)*

In this ground, Sears argues that trial counsel failed to impeach Patterson with the fact that, before trial, Patterson told the police that Sears and another individual—Kassim Hosendove—came to his business the day before the incident to "case" the business for the robbery, but Hosendove was in Florida at the time of the incident. Respondent argues, and the Report agrees, that this ground is barred because it was not raised to and ruled on by the PCR court. The Court agrees with Respondent.

If a PCR court does not make specific findings of fact and conclusions of law on a

16

petitioner's allegations, he must make a Rule 59(e) motion asking the court to do so, or the issues will not be preserved for appellate review. *Marlar v. State*, 653 S.E.2d 266, 267 (S.C. 2007) (per curiam); *see also Pruitt v. State*, 423 S.E.2d 127, 128 (S.C. 1992) (per curiam) (holding that a PCR petitioner "has an obligation to review the [PCR court's] order and file a Rule 59(e), SCRCP, motion to alter or amend if the order fails to set forth the findings and the reasons for those findings as required by [S.C. Code Ann.] § 17-27-80 and Rule 52(a), SCRCP.").

Sears objects to the Report's conclusion that this ground is procedurally barred. He argues that "the slight discrepancy between the argument advanced by [Sears] and the issued decided upon by the PCR court is whether or not defense counsel should have impeached Investigator McDonald or Patterson with evidence regarding Hosendove," and that the PCR court's ruling preserved the claim for appeal. (Doc. #38 at 13.) The Court disagrees.

Sears' argument in his PCR petition was that Patterson had stated that Sears and Hosendove were at the business the day before in an attempt to case the business for the robbery, but that this could not have been the case because Hosendove "had an airtight alibi." (Doc. #22-2 at 30–31.) Sears asserts that this information should have been "utilized" in some unspecified manner to demonstrate that Patterson's story was a fabrication. (*Id.*) However, the PCR court's entire discussion of this issue consisted of the following:

> Kassim Hosendove identification: Applicant wanted to impeach Investigator McDonald's testimony about how Hosendove came to be a suspect and the fact that he was in Florida when the incident occurred and not at the location. McDonald testified about the victim stating that Applicant and Hosendove were at the store the previous day looking at merchandise. Trial Counsel objected to the testimony and after a side bar conversation, the court sustained the objection. Whatever objection Trial Counsel had about the testimony, the Court sustained the objection, and there was no harm to the Applicant. Trial Counsel was protecting Applicant's interest.

(Doc. #22-2 at 164.)

The PCR court did not address the issue that Sears now seeks to address—whether trial

17

counsel was ineffective in failing to impeach Patterson's credibility by questioning him (or the investigator) about the fact that Hosendove was evidently not in the state at the time of the incident. Because the PCR court did not make specific findings of fact and conclusions of law of law as to this allegation, in order to preserve the issue, Sears was required to file a proper Rule 59(e) motion asking the court to make such a ruling. *Marlar*, 653 S.E.2d at 267. He failed to do so. Thus, as with Ground 3(2), this issue was not exhausted, is now time-barred by § 17-27-45(A), and Sears has not shown cause and prejudice to overcome this independent and adequate state procedural bar. Accordingly, Sears is not entitled to relief on this ground. Additionally, even if the Court were to reach the merits of this argument, Sears would not be entitled to relief for the reasons discussed by Respondent. (*See* Doc. #20 at 45–49.)

### D.   Ground 4

Regarding Sears' cumulative error claim, the Report notes that an independent claim of cumulative error has been rejected by the Fourth Circuit. *See Fisher v. Angelone*, 163 F.3d 835, 852 (4th Cir. 1998). In his objections, Sears concedes "that the Fourth Circuit appears to have foreclosed habeas relief based on cumulative errors of counsel," and merely seeks to preserve the issue for appellate review. (Doc. #38 at 17.) Accordingly, Sears is not entitled to relief on this ground.

## V.   Conclusion

In light of the standard set forth in *Wallace*, the Court has reviewed, *de novo*, the Report and the objections. After careful review of the Report and the objections, the Court **ACCEPTS**

the Report, including the legal and factual analysis set forth in the Report. Petitioner's objections are **OVERRULED**. Accordingly, Respondent's motion for summary judgment, (Doc. #19), is **GRANTED** and Petitioner's motion for relief pursuant to § 2254, (Doc. #1), is **DENIED**. This action is hereby **DISMISSED**.

The Court has reviewed this petition in accordance with Rule 11 of the Rules Governing Section 2254 Proceedings. The Court concludes that it is not appropriate to issue a certificate of appealability as to the issues raised in this petition. Petitioner is advised that he may seek a certificate from the Fourth Circuit Court of Appeals under Rule 22 of the Federal Rules of Appellate Procedure.

**IT IS SO ORDERED**.

*s/ Terry L. Wooten*
Terry L. Wooten
Chief United States District Judge

March 21, 2014
Columbia, South Carolina